1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    JAMES L. DEKALB,                          No.  2:20-CV-1818-KJM-DMC-P

12                      Petitioner,
                                                <u>FINDINGS AND RECOMMENDATIONS</u>
13          v.

14    RALPH DIAZ,

15                      Respondent.

16

17              Petitioner, a state prisoner proceeding with appointed counsel, brings this petition

18    for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are

19    Petitioner's petition for a writ of habeas corpus, Respondent's answer to show cause, Petitioner's

20    traverse, and Respondent's reply.  ECF Nos. 1, 12, 22, 23.  Respondent has lodged the state court

21    record.  ECF No. 12-3 to 12-12.

22              In the habeas petition, Petitioner asserts five claims: (1) conviction was obtained

23    using evidence from an unconstitutional search and seizure; (2) insufficient evidence of the

24    required mental states to support his convictions; (3) jury instruction error; (4) improper

25    admission of prior burglary and theft evidence; and (5) cumulative error at trial deprived him of

26    his due process rights.  ECF No. 1.  Having reviewed the petition and the record, the undersigned

27    recommends that Petitioner's petition be denied.

28    / / /

                                                  1

1

# I.  BACKGROUND

A.  **Facts**[1]

After independently reviewing the record, this Court finds the state appellate court's summary accurate and adopts it herein.  In its unpublished memorandum and opinion affirming Petitioner's judgment of conviction on appeal, the California Court of Appeal provided the following factual summary:

## A. The burglary

On March 15, 2015, Dekalb's grandparents Larry and Nadine Dekalb were on vacation when a neighbor called to let them know Larry's pickup truck was missing from their driveway.[1] Nadine called her son Jeffrey, Dekalb's father, who drove to his parents' home. Larry's pickup truck was gone and a security door on the attached garage was torn open. A 12 to 15-inch section of metal screen had been pried away from the door frame, leaving a gap large enough for someone to reach keys that were hanging from a hook on the inner door. Jeffrey called the police.

[N.1 To avoid confusion, we will refer to several members of the Dekalb family by their first names. We intend no disrespect by this practice.]

Three days later Fairfield police found the stolen truck parked in downtown Fairfield. In it were a laptop computer and three rifles that had been stolen from Larry and Nadine's home.
When Larry and Nadine returned from vacation on March 19 they discovered that these and other items were missing from their home including the keys to their house and Larry's truck, watches, jewelry, a coin bank, a laptop charger and a .22-caliber Ruger convertible revolver. The total value of the stolen items was between $ 4,500 and $ 4,750.

## B. The Arrest

On March 20, 2015, Fairfield Police Officer Nicholas McDowell responded to a report of a person acting erratically, yelling and banging on windows. He found Dekalb sitting on the sidewalk behind some planter boxes, rummaging through a backpack. When Officer McDowell approached, Dekalb offered to sell him methamphetamine. This, as well as Dekalb's fidgety movements, difficulty following directions, verbal outbursts, rapid speech, and inability to cooperate with an examination indicated that Dekalb was under the influence of methamphetamine.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence.  See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012).  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  As a result, the facts are taken from the opinion of the California Court of Appeal for the First Appellate District in People v. Dekalb, No. A151343, 2019 WL 762517 (Cal. App. Ct. Feb. 21, 2019), which Respondent lodged as ECF No. 12-10.  Petitioner may also be referred to as "defendant" in this restatement of facts.

Officer Cole Spencer was dispatched to assist Officer McDowell. When he arrived Dekalb was sitting on a planter box talking with McDowell. McDowell informed Spencer that Dekalb had asked if he wanted to buy methamphetamine. Based on Dekalb's statements and "fidgety, kind of nonsensical" behavior, Officer Spencer handcuffed and searched him but found no methamphetamine. Officer McDowell told Spencer about the backpack Dekalb had been going through, which was now about 10 feet away. Officer Spencer unzipped the backpack and found a loaded .22-caliber Ruger revolver, a watch, and various pieces of jewelry. Nadine later confirmed that the gun and jewelry belonged to her and her husband.

In April 2016 Dekalb wrote to his father from jail that he "wasn't planning on doing all the damage I did, but just to take one of the guns."

## C. Mental Illness

DeKalb was raised primarily by his father, but he spent a lot of time at his grandparents' home. When he was 19 he was diagnosed with schizophrenia. Within the following year he moved out of his father's home because, as Jeffrey testified, "it just got too hard to handle." After that he was either homeless or in a halfway house or drug rehabilitation program. Jeffrey gave Dekalb food when he came to the door, but did not allow his son in his home. Dekalb used marijuana and was a heavy drinker.

Jeffrey found it impossible to communicate with Dekalb during his schizophrenic episodes. He testified, "you can't talk to him. And he's just, you know, only word to come up with is crazy." Usually when Dekalb's episodes occurred Jeffrey would have to call the police or tell his son to leave. But they occurred during only 10 to 15 percent of Jeffrey's contacts with Dekalb, and the rest of the time Dekalb seemed normal and intelligent. His episodes were usually triggered by someone confronting or disagreeing with him, when he was under pressure or nervous, or had not taken his medication. He could become delusional, adopting the persona of rapper Tupac Shakur and going into what his father described as "thug mode." When he was around 19 Dekalb told his family he was Jesus Christ.

Until 2011 or 2012 Nadine and Larry would occasionally let Dekalb shower and spend the night at their house, but after that they stopped allowing him in their home. When asked why, Jeffrey explained that Dekalb had stolen Larry's pickup truck.[2] On that occasion Jeffrey spotted Dekalb driving Larry's truck, followed him to Larry and Nadine's house, chased him down and tackled him, and retrieved Larry and Nadine's house and car keys from Dekalb's pocket. At the time, Dekalb did not appear to be having one of his episodes and seemed normal. A watch and ring were missing from Larry and Nadine's home. Jeffrey found a video camera in their living room that showed Dekalb posing in the mirror with Larry's Ruger revolver, one of the guns he also stole in this case. Larry always kept the Ruger loaded in the drawer of his bedside stand.

[N.2 As we discuss in section IV, *post,* the date of this first auto theft is unclear from the record.]

/ / /

3

Dekalb was no longer welcome in Larry and Nadine's home after that incident "[b]ecause he just had caused us so much heartache, so much trouble .... [W]e actually feared for our safety." Nadine would still converse with her grandson, but on two occasions one of his episodes was triggered after she refused to let him in the house or to drive him to Sacramento.

On the morning of March 15, 2015, Dekalb came to Jeffrey's house and asked for food. Jeffrey gave him food, but Dekalb threw it in the bushes. When Jeffrey confronted him Dekalb "got all aggravated and stomped off down the street and yelling stuff down the neighborhood, all the way down the road. [¶] ... [¶] Foul, bad stuff."

### D. Defense Case

Psychologist Andrew Pojman testified as an expert in clinical psychology and psychological assessment. Dr. Pojman reviewed Dekalb's medical records and the police reports and videotape of his arrest, met with him twice, and administered various tests. The tests revealed intelligence in the low average range and notable deficits in executive functioning. Dekalb's diagnosis is schizoaffective disorder, bipolar type. When not on medication he becomes disorganized and is likely to present delusional thinking. Methamphetamine and alcohol generally exacerbate the symptoms of schizophrenia or schizoaffective disorder, including delusional thinking.

Dr. Pojman thought Dekalb's behavior around Officers Spencer and McDowell displayed symptoms of psychosis, most notably his apparent failure to perceive they were police officers and soliciting a drug transaction. His nonsensical speech, parroting back the officer's request to remove his shoes, and distracted behavior indicated psychosis, although it was also possible that Dekalb was under the influence of a substance. Dekalb's belief when he was arrested that his cell phone was a marijuana pipe and that he was from "County Jail" was consistent with a "delusional space of like he was this cool dude, drug guy." This was different from how DeKalb appeared when Dr. Pojman interviewed him or in the letter he wrote his father from jail, when he was medicated. Dekalb was more socially appropriate and presented better during his interviews, and his letter was organized, clear and displayed some insight.

Dr. Pojman opined that a hypothetical delusional homeless person with schizoaffective disorder would be able to find a familiar house, retrieve keys from a hook, and find and remove items from drawers or cupboards without making a mess. Asking for food and then throwing it into the bushes could indicate the person was delusional. Such a person could drive a car while delusional, could believe the car belonged to them, and could think they had the right to be somewhere they did not.

The jury convicted Dekalb of possession of a firearm by a felon, possession of a concealed firearm by a felon, carrying a loaded firearm, first degree residential burglary, receiving stolen property, vehicle theft and theft from an elder. The court dismissed a charge of receiving stolen property pursuant to Penal Code section 496, subdivision (a). Dekalb was sentenced to a total prison term of six years and eight months. This appeal is timely.

ECF No. 12-10 at 2-6.

/ / /

1

B.      **Procedural History**

2          On January 19, 2017, a jury found Petitioner guilty of possession of a firearm by a

3   felon (Cal. Penal Code section 29800(a)(1)), having a concealed firearm on his person (Cal. Penal

4   Code section 25400(a)(2)) with a previous felony conviction, carrying a loaded firearm (Cal.

5   Penal Code section 25850(a)) with a previous felony conviction, first degree residential burglary

6   (Cal. Penal Code section 459), unlawful driving or taking of a vehicle (Cal. Veh. Code section

7   10851(a)), and theft from an elder or dependent adult (Cal. Penal Code section 368(d)) greater

8   than $950.  ECF No. 12-4 at 216-23.  The trial court sentenced Petitioner to six years and eight

9   months in state prison.  Id. at 235-37.

10         Petitioner appealed his conviction, and the state appellate court affirmed the

11  judgment.  ECF Nos. 12-7 to 12-10.  He subsequently filed a petition for review in the California

12  Supreme Court.  ECF No. 12-11.  The California Supreme Court summarily denied review.  ECF

13  No. 12-12.

14         Petitioner filed a habeas petition before this Court on August 31, 2020.  ECF No.

15  1.  Respondent filed an answer to show cause.  ECF No. 12.  Petitioner filed a traverse, and

16  Respondent filed a reply.  ECF Nos. 22 & 23.

17

18                        **II.  STANDARDS OF REVIEW**

19         An application for a writ of habeas corpus by a person in custody under a

20  judgment of a state court can be granted only for violations of the Constitution or laws or treaties

21  of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

22  interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v.

23  McGuire, 502 U.S. 62, 67-68 (1991).

24         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

25  habeas corpus relief:

26         An application for a writ of habeas corpus on behalf of a person in
           custody pursuant to the judgment of a State court shall not be granted
27         with respect to any claim that was adjudicated on the merits in State
           court proceedings unless the adjudication of the claim -
28

1       (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

       (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established federal law.  Under both standards, "clearly established law" means the holdings of the United States Supreme Court at the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)); see also Plumlee v. Masto, 512 F.3d 1204, 1210 (9th Cir. 2008) (en banc) ("What matters are the holdings of the Supreme Court, not the holdings of lower federal courts.")  Unless Supreme Court precedent squarely addresses an issue, federal law is not clearly established, and federal habeas relief is unavailable because the federal habeas court must defer to the state court's decision.  See Musladin, 549 U.S. at 76-77; Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120 (2008)).  Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's

/ / /

/ / /

/ / /

6

case."[2]  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas Petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

This Court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the

---

[2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

2   banc).  "When a federal claim has been presented to a state court and the state court has denied

3   relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

4   of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.

5   This presumption may be overcome by a showing "there is reason to think some other

6   explanation for the state court's decision is more likely."  Id. at 99-100.

7

8                            **III.  DISCUSSION**

9              Petitioner contends the following violations of his federal constitutional rights

10  occurred at trial: (1) conviction was obtained using evidence from an unconstitutional search and

11  seizure; (2) insufficient evidence of the required mental states for his convictions; (3) jury

12  instruction error; (4) improper admission of prior burglary and theft evidence; and (5) cumulative

13  error at trial deprived him of his due process rights.  See ECF No. 1.  Respondent contends

14  Petitioner is not entitled to federal habeas relief because the state court's determinations on these

15  claims were neither contrary to nor based on an unreasonable application of clearly established

16  federal law.  ECF No. 12-1.

17       **A.       Claim One: Fourth Amendment Unreasonable Search and Seizure**

18              Petitioner argues that the warrantless search of his backpack violated his Fourth

19  Amendment right, and that the trial court erred in denying his motion to suppress the evidence.

20  ECF No. 1.  Although the state appellate court agreed with Petitioner that the search incident to

21  arrest exception did not apply, he asserts that the state appellate court erred in holding that the

22  items would have been discovered during an inventory search when he was booked for arrest.

23  Id. at 4; see also ECF No. 22 at 14.  In response, Respondent contends that Petitioner's Fourth

24  Amendment claim is not cognizable on federal habeas review.  ECF No. 12-1 at 3.

25  / / /

26  / / /

27  / / /

28  / / /

8

1          The state appellate court considered Petitioner's Fourth Amendment claim and

2    rejected it on the merits.

3          Dekalb asserts the search of his backpack violated the Fourth
Amendment because the officers failed to obtain a warrant and the search

4    was not justified under the "search incident to arrest" exception to the
warrant requirement. Accordingly, he maintains, the court erred when it

5    denied his motion to suppress the .22 revolver found in his backpack.
While the search cannot be justified as incidental to Dekalb's arrest, we

6    disagree that the court erred in denying the motion to suppress.
      " 'A defendant may move to suppress evidence on the ground that

7    "[t]he search or seizure without a warrant was unreasonable.' " [Citation.]
A warrantless search is presumed to be unreasonable, and the prosecution

8    bears the burden of demonstrating a legal justification for the search.
[Citation.] "The standard of appellate review of a trial court's ruling on a

9    motion to suppress is well established. We defer to the trial court's factual
findings, express or implied, where supported by substantial evidence. In

10   determining whether, on the facts so found, the search and seizure was
reasonable under the Fourth Amendment, we exercise our independent

11   judgment." ' " (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.) We affirm
the trial court's ruling if it is correct on any applicable legal theory, even if

12   for reasons different than those given by the trial court. (*People v.
Evans* (2011) 200 Cal.App.4th 735, 742.)

13         Dekalb argues the search was not justified as a warrantless search

14   incident to his arrest because the backpack was not within his immediate
control at the time. (See *People v. Macabeo* (2016) 1 Cal.5th 1206,

15   1214 [search incident to arrest limited to area from which arrestee might
gain access to weapon or destroy evidence].) So far, we agree. When

16   Officer Spencer conducted the search DeKalb was handcuffed and under
Officer McDowell's supervision seated about 10 feet away from the

17   backpack. He therefore had no access to or control over it, so this
exception to the warrant requirement does not apply.

18         Even so, the motion to suppress was properly denied on another
ground. The revolver would inevitably have been discovered during an

19   inventory search following Dekalb's arrest on drug charges. The inevitable
discovery doctrine "acts as an exception to the exclusionary rule and

20   permits the admission of otherwise excluded evidence 'if the government
can prove that the evidence would have been obtained inevitably and,

21   therefore, would have been admitted regardless of any overreaching by the
police.' " (*People v. Hughston* (2008) 168 Cal.App.4th 1072, 1071.) The

22   test is not whether the police would have certainly discovered the tainted
evidence. Rather, it is only necessary for the prosecutor to show a

23   reasonably strong probability that they would have. (*People v. Superior
Court* (*Tunch* ) (1978) 80 Cal.App.3d 665, 681.) In deciding whether the

24   inevitable discovery exception applies, we determine, viewing the
circumstances as they existed at the instant before the unlawful search,

25   what would have happened had the unlawful search not occurred. (*People
v. Hughston, supra,* 168 Cal.App.4th at p. 1072.)

26         In this case Officer McDowell saw Dekalb rummaging through his
backpack when he first contacted him. Dekalb appeared to be under the

27   influence of methamphetamine, offered to sell the officers "tina" or
"crank," and responded affirmatively when asked if he had any in his

28   possession. Officer Spencer handcuffed Dekalb based on this exchange.
Plainly, then, Dekalb was to be arrested for drug offenses before the

officers searched his backpack and found the gun. The backpack would have been seized upon his arrest and its contents would inevitably have been inventoried during a booking or inventory search. (*Illinois v. Lafayette* (1983) 462 U.S. 640, 648 [upholding inventory search of arrestee's shoulder bag].) "[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." (*Ibid.*) The gun and other items found in the backpack were properly admitted at trial.

ECF No. 12-10 at 6-8.

The Supreme Court has held that when a state court has provided Petitioner with a full and fair opportunity to litigate a Fourth Amendment claim, federal habeas relief is not available on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. <u>Stone v. Powell</u>, 428 U.S. 465, 494-95 (1976). The Ninth Circuit has determined that the Supreme Court's holding in <u>Stone v. Powell</u> survived the passage of the Antiterrorism Effective Death Penalty Act. <u>Newman v. Wengler</u>, 790 F.3d 876, 880 (9th Cir. 2015) (per curiam). On habeas review, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996); <u>see also</u> <u>Moormann v. Schriro</u>, 426 F.3d 1044, 1053 (9th Cir. 2005) (finding that petitioner had a full and fair opportunity to litigate his Fourth Amendment claim because he raised the claim in a pre-trial motion, the trial court held a hearing and denied his motion, and an appellate court reviewed the trial court's decision).

Here, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. Under California law, a defendant can move to suppress evidence on the grounds that it was obtained in violation of the Fourth Amendment. <u>See</u> <u>Lugo v. Borg</u>, 81 F.3d 169 (9th Cir. 1996); <u>Gordon v. Duran</u>, 895 F.2d 610, 613-14 (9th Cir. 1990). Petitioner exercised this right. Defense counsel filed a motion to suppress any and all physical evidence, observations, or oral

/ / /

/ / /

/ / /

/ / /

statements from the warrantless search.[3]  ECF No. 12-4 at 50-51.  The trial court denied the

motion.  Id. at 69.  Defense counsel again challenged the evidence in a motion to dismiss pursuant

to California Penal Code section 995.  Id. at 86-87.  The trial court also denied this motion.  Id. at

104.  The state appellate court affirmed the trial court's judgment, and the state supreme court

denied review.  ECF Nos. 12-10 & 12-12.  Because Petitioner had a full and fair opportunity to

litigate his Fourth Amendment claim, he is not entitled to federal habeas relief on this claim.

Powell, 428 U.S. at 481-82 ("We hold, therefore, that where the State has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not

require that a state prisoner be granted federal habeas corpus relief on the ground that evidence

obtained in an unconstitutional search or seizure was introduced at his trial.")  This Court

recommends denying this claim.

### B.   Claim Two: Insufficient Evidence to Support Conviction

Petitioner contends that there was insufficient evidence to support the mental state

for his conviction.  ECF No. 1 at 4.  Specifically, he states that there was uncontested evidence of

"his disordered thinking, delusions, and being out of touch with reality around or at the times of

the alleged offenses" that demonstrate he did not know there was a loaded and concealed gun in

his backpack and did not have the specific intent to steal or knowledge that he took items that

were not his or entered a premise without consent.  Id. at 4, 7; see also ECF No. 22 at 14.

Respondent argues that the state court's determination was reasonable.  ECF No. 12-1 at 15-18.

In the last well-reasoned state court decision, the California Court of Appeal

denied Petitioner's claim.

> DeKalb contends on the basis of his "disordered thinking,
> delusions, and generally being out of touch with reality" that there was
> insufficient evidence to prove he acted with the mental states required for
> conviction on any of the charges against him. In regard to the gun offenses
> he maintains there was insufficient evidence to prove he knew that: (1) he
> possessed a firearm; (2) he had been convicted of a felony; or (3) he was

---

[3]    In the traverse, Petitioner claims that "defense [counsel] argued that the search and
seizure of the defendant's backpack was illegal" under the Fifth and Sixth Amendments, not the
Fourth Amendment.  ECF No. 22 at 14 n.6.  He is mistaken.  The motion to suppress was based
on the Fourth, Fifth, and Sixth Amendments.  ECF No. 12-4 at 51.  As Petitioner admits, he only
pursued the Fourth Amendment claim on direct appeal.

carrying a firearm and that it was concealed and loaded. As to burglary and theft, he contends the evidence was insufficient to prove he intended to permanently or temporarily deprive his grandparents of property; knew the property was not his and that he lacked their consent to take it; or knew or should have known the owner was an elder. In his view, the evidence failed to rule out a reasonable doubt that his psychosis negated the knowledge and intent elements of the charged offenses. We disagree.

"When an appellant attacks the sufficiency of the evidence to support a conviction, this court must examine the entire record in the light most favorable to the judgment below and presume in support of the judgment the existence of every fact that can reasonably be deduced from the evidence. [Citation.] Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. [Citation.] If the circumstances reasonably justify the findings of the trier of fact as to each element of the offense, an opinion of the reviewing court that the circumstances might also lead to a contrary finding does not warrant reversal." (*In re Leland D.* (1990) 223 Cal.App.3d 251, 258; *People v. Zamudio* (2008) 43 Cal.4th 327, 358.)

The importance of circumstantial evidence to prove intent in this case does not change the standard of review. "The standard of appellate review is the same in cases in which the People rely primarily on circumstantial evidence. [Citation.] Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.) We therefore reject Dekalb's implicit suggestion that *this court*, rather than the jury, must find the evidence was irreconcilable with an innocent interpretation. Our inquiry, rather, is whether on this record the jury reasonably could have so found. As in other circumstances, "the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination of whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, which will support the decision of the trier of fact." (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1373.)

Dekalb's argument that a rational jury could not rule out an innocent interpretation of the evidence beyond a reasonable doubt is premised on Dr. Pojman's testimony that it "could be very difficult" to know what a schizophrenic person is thinking at any given time. Dekalb argues that "given that appellant was often delusional, acted psychotic the day of the takings and irrationally during and after them, and was clearly delusional at the time of his possession of the firearm, it was the prosecution's burden to prove appellant was *not* ... 'acting under the power of a delusion' during the alleged offenses." This, he maintains, was "an uphill battle, one the prosecutor could not win."

We disagree. As the People observe, Dekalb *admitted* in his letter to Jeffrey that he " 'wasn't planning on doing all the damage I did but just to take one of the guns.' " His admission that he planned to take one of Larry's guns is direct evidence that Dekalb entered his grandparents' home with the intent to commit theft. The evidence that he previously broke into the house, stole similar items, and videotaped himself brandishing the same revolver stolen during the charged burglary supplied a strong inference that he harbored the same intent and knowledge this time around. Larry and Nadine's testimony that Dekalb was no longer allowed into their home after the first burglary is evidence he understood

he had no right to enter the home, as did the glaring fact that he pried the metal screen off the security door to gain entry.

Dekalb further contends the evidence was insufficient to prove he understood there was a gun in his backpack when he was arrested and charged with its possession. This is also meritless. Dekalb admitted in writing *that he planned to steal Larry's gun*—the same gun that was in his backpack when he was arrested. He attempts to discount the significance of his admission by arguing his letter to his father reflects only his mental state on the day of the burglary, not when he was arrested five days later, but the jury could reasonably reject such a constricted view of the evidence as unreasonable—particularly given that Dekalb was observed rummaging through the backpack moments before his arrest.

Reviewing the evidence under the proper standard, we are also unpersuaded that evidence of the nature and severity of Dekalb's mental illness precluded the jury from ruling out a reasonable doubt that he understood at the relevant times that (1) he had previously been convicted of a felony; (3) his grandparents were "elders" within the meaning of Penal Code section 368, subdivision (d)[3]; (3) he was unwelcome in their home; or (4) he had no right to take their belongings. The evidence before the jury, including Dekalb's letter from jail and evidence of the earlier burglary, was sufficient to reasonably eliminate an innocent interpretation beyond a reasonable doubt. Dekalb also argues there was no evidence he knew the gun was loaded, but knowledge that a firearm is loaded is not required for conviction of carrying a loaded firearm in violation of Penal Code section 25850. (*People v. Dillard* (1984) 154 Cal.App.3d 261, 266 [construing former section 12031, the predecessor to Penal Code section 25850]; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1514, fn. 3.) The mental state elements of the convictions are supported by substantial evidence.

[N.3 Penal Code section 368, subdivision (d) penalizes any non-caretaker who "violates any provision of law proscribing theft ... with respect to the property ... of an elder or a dependent adult, and who knows or reasonably should know that the victim is an elder or a dependent adult."]

ECF No. 12-10 at 8-11.

A Petitioner is entitled to habeas corpus relief on a sufficiency of the evidence claim "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see also Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011). This inquiry involves two steps. First, the federal court must review the evidence in the light most favorable to the prosecution. Jackson, 443 U.S. at 319. If there are conflicting factual inferences, the federal court must presume the jury resolved the conflicts in favor of the prosecution. Id. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of

1   fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.");

2   McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam).  Second, the federal court will

3   "determine whether the evidence at trial, including any evidence of innocence, could allow *any*

4   rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."

5   United States v. Nevils, 598 F.3d 1158, 1165 (9th Cir. 2010) (en banc).

6          Although this Court's review is grounded in due process under the Fourteenth

7   Amendment, the Jackson standard "must be applied with explicit reference to the substantive

8   elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n.16; Juan H.

9   v. Allen, 408 F.3d 1262, 1275-76 (9th Cir. 2005).  This Court will look to state law to establish

10  the elements of the offense and then turn to the federal question of whether the state court was

11  objectively unreasonable in concluding that sufficient evidence supported that conviction.  See

12  Johnson v. Montgomery, 899 F.3d 1052, 1056 (9th Cir. 2018).

13         "After AEDPA, we apply the standards of *Jackson* with an additional layer of

14  deference."  Juan H., 408 F.3d at 1274; see Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per

15  curiam).  On direct appeal at the state level, "it is the responsibility of the jury—not the court—to

16  decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may

17  set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact

18  could have agreed with the jury."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  On

19  habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of

20  the evidence challenge simply because the federal court disagrees with the state court.  The

21  federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

22  Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

23         Petitioner challenges the sufficiency of the evidence for his six offenses.  Three of

24  these offenses are related to possession of a firearm, which require Petitioner to know that he

25  possessed a firearm.  See People v. Clark, 62 Cal. App. 5th 939, 958 (2021) (elements for Cal.

26  Penal Code § 29800(a)(1)); People v. Aguilar, 245 Cal. App. 4th 1010, 1017 (2016) (elements for

27  Cal. Penal Code § 25400(a)(1)); People v. Gonzales, 232 Cal. App. 4th 1449, 1458 (2015)

28  (elements for Cal. Penal Code § 25850(a)).  First degree residential burglary requires intent to

1   commit a theft or felony at time of entry.  See In re Matthew A., 165 Cal. App. 4th 537, 540-41

2   (2008) ("However, the existence of the requisite intent is rarely shown by direct proof, but may

3   be inferred from facts and circumstances.").  Theft and unlawful driving or taking of a vehicle

4   requires specific intent to permanently, or temporarily, deprive the owner of title or possession of

5   the car.  See Cal. Penal Code § 10851(a); People v. Starkey, 234 Cal. App. 2d 822, 828 (1965).

6   Lastly, theft from an elder demands proof that the accused knew or reasonably should have

7   known that the victim was an elderly person.  See Cal. Penal Code § 368(d).

8           After independently reviewing the record, this Court concludes that the state court

9   reasonably determined that there was sufficient evidence to support the requisite mental states for

10  each crime.  As to the firearm crimes, Petitioner wrote a letter to his father from jail stating that

11  he "wasn't planning on doing all the damage I did, but just to take one of the guns."  ECF No. 12-

12  10 at 4.  Petitioner was aware that his grandfather kept guns inside the house; he had previously

13  broken into the house, recorded himself brandishing a pistol while "doing some gang poses and

14  talking like a gangster."  ECF No. 12-5 at 109, 292.  When Petitioner was arrested, the officers

15  recovered a loaded gun from his backpack and the other guns inside the stolen truck.  Id. at 155,

16  317.  This is adequate proof that Petitioner knew he possessed a firearm, one of which was

17  loaded.

18          As to the burglary charge, Petitioner's letter to his father is also evidence that he

19  intended to steal when he broke into the house.  Petitioner knew that he was not permitted inside

20  the home after the previously breaking in and stealing their truck and jewelry.  Id. at 93, 101; see

21  also id. at 291-92.  When Petitioner visited his grandparents for food or a place to stay, he was

22  allowed inside the garage through the garage door.  ECF No. 12-6 at 17-18.  There was direct

23  evidence that Petitioner stole; after searching Petitioner's backpack, officers recovered several of

24  the stolen jewelry items.  ECF No. 12-5 at 164, 302-03.

25          For the car theft charge, there is circumstantial evidence that Petitioner intended to

26  deprive his grandparents of possession of the truck; Petitioner peeled away a metal security door

27  just wide enough to reach inside and grab the keys hanging from wall hooks.  ECF No. 12-5 at

28  141-46, 274-75.  Lastly, Petitioner grew up in his grandparent's home, which demonstrates that

1   he knew or should have known they were elderly.  ECF No. 12-6 at 18.  Despite Dr. Pojman's

2   testimony about Petitioner's history of mental illness, his testimony that someone with

3   Petitioner's mental health diagnosis could find a familiar house and get inside, supports the jury's

4   findings in this case.  ECF No. 12-5 at 212-13; <u>see also id.</u> at 241-42.  Petitioner presented no

5   evidence that he was experiencing a psychotic episode when he broke into house and stole the

6   guns, jewelry, and truck.  To the extent there are conflicting factual inferences, this Court

7   presumes that the jury resolved them in favor of the prosecution.  <u>Jackson</u>, 443 U.S. at 326.  This

8   Court concludes that the state appellate court's finding that there was sufficient evidence to

9   support the conviction was not objectively unreasonable and recommends denying habeas relief

10  on this claim.

11          **C.**      **Claim Three: Jury Instruction Error Regarding CALCRIM No. 225**

12                  Third, Petitioner claims that "using a pattern instruction created by an entity

13  without law-making authority" deprived him of "a more favorable-and less burden-shifting-

14  instruction on proof by circumstantial evidence" as required by the California Supreme Court.

15  ECF No. 1 at 5; <u>see also</u> ECF No. 22 at 12-15 (specifying that the instruction was "improper

16  because the jury must be instructed that circumstantial evidence must be irreconcilable with

17  innocence to justify a conviction").  In response, Respondent argues that the claim is procedurally

18  defaulted, and the state court reasonably rejected Petitioner's claim that CALCRIM No. 225

19  violated his due process rights.  ECF No. 12-1 at 18-23.

20                  The state appellate court considered this claim and rejected it for the following

21  reasons:

22                  Dekalb contends the trial court erred when it failed to instruct the
            jury the circumstantial evidence had to be irreconcilable with innocence to
23          justify a conviction. The People contend Dekalb forfeited the argument
            when defense counsel affirmatively agreed the jury should be instructed
24          with CALCRIM No. 225, the pattern instruction on the subject. Generally,
            " '[a] party may not argue on appeal that an instruction correct in law was
25          too general or incomplete, and thus needed clarification, without first
            requesting such clarification at trial.' " (*People v. Livingston* (2012) 53
26          Cal.4th 1145, 1165; accord, *People v. Guiuan* (1998) 18 Cal.4th 558, 570.)
            Dekalb asserts he was not required to request clarification because the
27          instruction actually given is not correct in law. (See *People v.
            Franco* (2009) 180 Cal.App.4th 713, 719 ["rule of forfeiture does not
28          apply, however, if the instruction was an incorrect statement of the law

                                                  16

[citation], or if the instructional error affected the defendant's substantial rights"].) We will address Dekalb's argument, but disagree the instruction is legally incorrect.

We review the instruction independently. (*People v. Guiuan, supra,* 18 Cal.4th at p. 569.) " 'In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights.' [Citation.] We determine the correctness of the jury instructions from the entire charge of the court, not from considering only parts of an instruction or one particular instruction. [Citation.] The absence of an essential element from one instruction may be cured by another instruction or the instructions taken as a whole. [Citation.] Further, in examining the entire charge we assume that jurors are ' " ' "intelligent persons and capable of understanding and correlating all jury instructions which are given." ' " ' " (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.)

In *People v. Bender* (1945) 27 Cal.2d 164 (*Bender* ), overruled on another point in *People v. Lasko* (2000) 23 Cal.4th 101, 110, the Supreme Court stated that in cases involving circumstantial evidence a jury should be instructed with the principle that " 'to justify a conviction, the facts or circumstances *must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion.*' " (*Id.* at p. 175, italics added.) Moreover, " '[n]either the statement in an instruction that the guilt of the defendant must be established beyond a reasonable doubt, nor the statement that as between two opposing reasonable inferences the one which is consistent with innocence must be preferred to the one tending to show guilt, satisfies the right of the defendant to have the jury instructed that where circumstantial evidence is relied upon by the People it must be irreconcilable with the theory of innocence in order to furnish a sound basis for conviction." (*Id.* at pp. 175-176.)

In this case the jury was instructed with CALCRIM No. 225, as follows: "The People must prove not only that the defendant did the act charged, but also that he acted with a particular intent or mental state. The instruction for each crime explains the intent or mental state required. The intent or mental state may be proved by circumstantial evidence. Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

"Also, before you may rely on circumstantial evidence to conclude that the defendant had the required intent or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence, is that the defendant had the required intent or mental state. [¶] If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent or mental state and another reasonable conclusion supports the finding that the defendant did not, you must conclude that the required intent or mental state was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." Dekalb maintains this pattern instruction conflicts with *Bender* because it does not expressly state that the jury could not convict unless the circumstantial evidence was inconsistent with any rational conclusion other than guilt. We disagree.

17

1           Our Supreme Court "has long held that when the prosecution's
case rests substantially on circumstantial evidence, trial courts must
2   give 'an instruction embodying the principle that to justify a conviction on
circumstantial evidence the facts and circumstances must not only be
3   entirely consistent with the theory of guilt but must be inconsistent with
any other rational conclusion.' " (*People v. Livingston, supra,* 53 Cal.4th
4   at p. 1167.) The trial court did so when it instructed the jury with
CALCRIM No. 225 that "before you may rely on circumstantial evidence
5   to conclude that the defendant had the required intent or mental state, you
must be convinced that *the only reasonable conclusion* supported by
6   circumstantial evidence is that the defendant had the required intent or
mental state." (Italics added.) No reasonable jury would interpret this
7   language to allow conviction if it could draw multiple reasonable
inferences from the circumstantial evidence, one of which points to
8   innocence. "Words of equal import may be substituted if the principle is
substantially but clearly and fairly set forth." (*People v. Navarro* (1946)
9   74 Cal.App.2d 544, 550.) None of the authority cited by Dekalb suggests
otherwise. (See, e.g., *People v. Kinowaki* (1940) 39 Cal.App.2d 376,
10  380 [trial court erred in refusing to give *Bender* instruction or "its
equivalent"]; *People v. Koenig* (1946) 29 Cal.2d 87, 93; *People v.*
11  *Rayol* (1944) 65 Cal.App.2d 462, 465-466; *Bender, supra,* 27 Cal.2d at p.
177.) CALRIM No. 225 correctly stated the law, and, for that reason,
12  Dekalb forfeited his claim of error on the point.

13          ECF No. 12-10 at 11-13.

14          Although procedural issues are often addressed before the merits, they need not be.

15  The Supreme Court in Lambrix v. Singletary, 520 U.S. 518 (1997) skipped over the procedural

16  bar argument and proceeded to the merits.  Id. at 525 ("Despite our puzzlement at the Court of

17  Appeals' failure to resolve this case on the basis of procedural bar, we hesitate to resolve it on

18  that basis ourselves."); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating

19  that courts may "reach the merits of habeas petitions if they are, on their face and without regard

20  to any facts that could be developed below, clearly not meritorious despite an asserted procedural

21  bar.").  "Procedural bar issues are not infrequently more complex than the merits issues" and "it

22  may well make sense in some instances to proceed to the merits if the result will be the same."

23  Franklin, 290 F.3d at 1232; see, e.g., Dean v. Schriro, 371 F. App'x 751 (9th Cir. 2010).  Because

24  this claim can be resolved on the merits, this Court declines to decide whether a procedural bar

25  precludes Petitioner from obtaining habeas relief.

26  / / /

27  / / /

28  / / /

18

On the merits, federal habeas relief is only available if "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Gilmore v. Taylor, 508 U.S. 333, 342 (1993) (In non-capital cases, "we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error. To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."). The instruction cannot merely be "undesirable, erroneous, or even 'universally condemned.'" Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). It must violate a constitutional right. Id. "[T]he defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). The Supreme Court has cautioned that there are few infractions that violate fundamental fairness. Id. at 72-73; see, e.g., Sarausad, 555 U.S. at 191-92; Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam) ("Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation"); Jones v. United States, 527 U.S. 373, 390-92 (1999); Gilmore, 508 U.S. at 344.

Petitioner argues that the trial court was required to instruct the jury that (1) if there is more than one rational conclusion, the one pointing to the innocence must be adopted, and (2) the circumstantial evidence must be inconsistent with any rational conclusion other than guilt. He claims that the trial court did not provide the second instruction. This Court disagrees. The state appellate court reasonably concluded that the circumstantial evidence instruction correctly stated the law. The trial court instructed the jury on CALCRIM No. 225 as follows:

> The People must prove not only that the defendant did the acts charged, but also that he acted with a particular intent or mental state. The instruction for each crime explains the intent or mental state required.
> An intent or mental state may be proved by circumstantial evidence.

1
2
3
4
5
6
7
8
9
10

         Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

         Also, before you may rely on circumstantial evidence to conclude that the defendant had the required intent or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent or mental state. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent or mental state and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required intent or mental state was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable.

ECF No. 12-4 at 182 (jury instruction).

11
12
13
14
15
16
17
18
19
20
21
22

         The state appellate court stated that the California Supreme Court "has long held that when the prosecution's case rests substantially on circumstantial evidence, trial courts must give 'an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion.'" ECF No. 12-10 at 13 (citing People v. Livingston, 53 Cal. 4th 1145 (2012)).  The trial court satisfied this obligation.  It instructed the jury that "before you may rely on circumstantial evidence to conclude that the defendant had the required intent or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent or mental state."  ECF No. 12-4 at 182.  Petitioner has not shown that this instruction was ambiguous or that there was 'a reasonable likelihood' that the jury applied the instruction in a way that excused the state from proving the elements of the crime beyond a reasonable doubt.

23
24
25
26
27
28

         To the extent Petitioner claims that the jury instruction is incorrect under California law, the state appellate court disagreed and found "CALCRIM No. 225 correctly stated the law." ECF No. 12-10 at 13.  It is axiomatic that a state court's interpretation of state law is binding on a federal habeas court.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam); Estelle, 502 U.S. at 67-68.  Because this Court cannot second-guess the state court's interpretation of state law, this argument fails.

1        To the extent Petitioner claims that the state court's rejection of his claim is an

2   unreasonable application of In re Winship, 397 U.S. 358 (1970) and Hicks v. Oklahoma, 447 U.S.

3   343 (1980), he is mistaken.  ECF No. 1 at 9.  Both cases are distinguishable.  In Winship, the

4   Supreme Court held that the "constitutional safeguard of proof beyond a reasonable doubt" is

5   "required during the adjudicatory stage of a [juvenile] delinquency proceeding."  In re Winship,

6   397 U.S. at 368.  Here, Petitioner does not challenge the state court's reasonable doubt jury

7   instruction.  In Hicks, the Supreme Court held that a defendant has a right to have a jury fix the

8   sentence when it is based on a statute later found to be unconstitutional.  Hicks, 447 U.S. at 347.

9   In this case, Petitioner does not challenge his sentence.

10       This Court concludes that the state court's decision was not contrary to, or an

11  unreasonable application of, clearly established Supreme Court authority and recommends

12  denying habeas relief on this claim.

13       **D.      Claim Four: Prior Incidents of Past Burglary**

14       Petitioner argues that the trial court improperly admitted evidence of a "similar

15  entry and taking" from his grandparent's house as propensity evidence.  ECF No. 1 at 5; see also

16  ECF No. 22 at 3-12, 14.  Respondent argues that the state court's rejection of Petitioner's claim

17  was reasonable.  ECF No. 12-1 at 23-28; see also ECF No. 23.

18       The California Court of Appeal evaluated the Petitioner's arguments and denied

19  the claim.

20               Dekalb contends the court committed a prejudicial abuse of
         discretion when it admitted evidence of his prior burglary and theft from
21       Larry and Nadine. In a related argument he asserts Jeffrey's uncorrected
         testimony that implied there had also been a third break-in deprived him of
22       a fair trial. Neither argument is persuasive.

23                               A. Background

24               The prosecutor moved in limine to introduce testimony about
         Dekalb's previous burglary and theft from his grandparents that occurred
25       about three years before the charged offenses pursuant to Evidence Code
         section 1101, subdivision (b). The court ruled the evidence was admissible
26       to show intent and knowledge and was not unduly prejudicial. In response
         to an objection that the prosecutor had not timely disclosed the proffered
27       evidence, the court allowed defense counsel to defer cross-examination on
         the prior incident so she would have time to prepare.
28               Jeffrey testified at trial that he was not sure when the prior burglary

                                        21

had occurred but suggested it was in 2000, 2001 or 2002. Later he testified the incident was "probably more like 2003 to 2005." Larry testified he "guess[ed]" the prior theft was in 2003 or 2004. Nadine thought it probably occurred in 2005 or 2006.

During Larry's testimony, defense counsel renewed her objection to the other crimes evidence based on the new information that the prior incident occurred much more than three or four years before as the prosecutor had represented, and that she had not been provided enough notice to investigate it.[4] The court acknowledged the event was "a little more remote than I originally understood," but reaffirmed its ruling that the evidence was not unduly prejudicial. Jeffrey and his parents testified about the earlier burglary and theft.

[N.4 The prosecutor explained that Dekalb's family members had told her the first burglary occurred some four years earlier. Jeffrey confirmed that he now believed it occurred around 2004, and apologized to the court for having been confused about the dates.]

B. Analysis

We review the court's ruling for abuse of discretion. (*People v. Kipp*, (1998) 18 Cal.4th 349, 371 (*Kipp* ).) "Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition; but evidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes. [Citation.]" (*Id.* at p. 369.) To establish relevance on the issue of intent, the uncharged crimes need only be " 'sufficiently similar [to the charged offenses] to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' [Citations.]" ' " (*Id.* at p. 371.) "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) Accordingly, numerous decisions have upheld the admission of prior burglaries as relevant to prove the defendant possessed the intent to steal. (*People v. Rocha* (2013) 221 Cal.App.4th 1385, 1393 [citing collected cases].) We do so here, where the two burglaries were remarkably similar, and the question of defendant's mental state was the primary contested issue at trial.

Nor did the trial court abuse its discretion when it found the evidence's probative value was not outweighed by its potential for undue prejudice. (See *Kipp, supra*, 18 Cal.4th at p. 371.) "The governing test ... evaluates the risk of '*undue* ' prejudice, that is, ' "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues," not the prejudice 'that naturally flows from relevant, highly probative evidence.' [Citations.]" (*People v. Padilla* (1995) 11 Cal.4th 891, 925, italics added, overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) As the Supreme Court noted in *Kipp*, "prejudice of this sort is inherent whenever other crimes evidence is admitted [citation], and the risk of such prejudice was not unusually grave here." (*Kipp, supra*, at p. 372.) Here, as in *Kipp*, the evidence implicating defendant was strong, the prior offense was not any more inflammatory than the charged offense, and the jury was instructed to consider the evidence only for intent and not

22

1   for any improper purpose. (*Ibid.*) In these circumstances the court
    reasonably determined the probative value of the challenged evidence
2   outweighed any risk of undue prejudice.
            Lastly, Dekalb asserts he was deprived of a fair trial because
3   neither the prosecutor, the trial court nor his own attorney clarified
    testimony he contends gave the false impression that Larry and Nadine's
4   home had been burglarized yet a third time. The following exchange
    occurred while the prosecutor questioned Jeffrey about the prior burglary:
5   "Q. On the same day when you returned the items to your parents, did you
    notice anything about the house in regard to an entry being broken into?
6   [¶] A. No. [¶] Q. And was there—was there a time in which their bedroom
    had been broken into? [¶] A. Yes. [¶] Q. When was that? [¶] [Defense
7   Counsel]: I object. [¶] THE COURT: Folks, let me do this since I'm not
    sure where this evidence is headed. I'm going to excuse you for a couple
8   of minutes. [¶] ... [¶] I ask the witness to remain and flush this out, see
    whether this is admissible or not." After the jury left the courtroom,
9   Jeffrey clarified that his answer referred to the same prior burglary, not
    some third incident.[5]

10
    [N.5 The Attorney General is mistaken in suggesting the jury was present
11  for this testimony.]

12          While the cited testimony was arguably ambiguous, we do not
    agree with Dekalb's claim, asserted for the first time on appeal, that it
13  clearly referred to a third break-in. Larry testified that he always kept the
    Ruger in his bedroom, so we see no reason to believe the prosecutor's
14  mention that Larry and Nadine's bedroom had been broken into implied
    there was yet a third burglary. There was no evidence of any such
15  incident, and neither counsel even mentioned a third incident at any point
    during the trial. Dekalb's belated attempt to cast the cited question and
16  response as a prosecutorial failure to correct testimony actually or
    constructively known to be false (see *Napue v. Illinois* (1959) 360 U.S.
17  264, 269-270 ["a State may not knowingly use false evidence, including
    false testimony, to obtain a tainted conviction"] ) is unconvincing.
18  Moreover, any purported error was forfeited (to be clear, we find none) by
    defense counsel's failure to object and seek clarification, and on this
19  record there is no reasonable possibility the omission affected the verdict.
    (*Strickland v. Washington* (1984) 466 U.S. 668, 688; *People v.*
20  *Pope* (1979) 23 Cal.3d 412, 425.)

21          ECF No. 12-10 at 14-17.

22          "Under AEDPA, even clearly erroneous admissions of evidence that render a trial

23  fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by

24  'clearly established Federal law,' as laid out by the Supreme Court."  Holley v. Yarborough, 568

25  F.3d 1091, 1101 (9th Cir. 2009); see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir. 2021);

26  Nava v. Diaz, 816 F. App'x 192, 193 (9th Cir. 2020).  Because the Supreme Court has not clearly

27  decided whether the admission of propensity evidence constitutes a due process violation

28  sufficient to warrant habeas relief, this Court cannot conclude that the state court's ruling was

                                        23

1    contrary to, or an unreasonable application of, clearly established federal law.  See Estelle, 502

2    U.S. at 75 n.5; see also Van Patten, 552 U.S. at 126; Jennings v. Runnels, 493 F. App'x 903, 906

3    (9th Cir. 2012); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006); Bradford v. Paramo, No.

4    2:17-cv-05756 JAK JC, 2020 WL 7633915, at *6-7 (C.D. Cal. Nov. 12, 2020) (citing cases),

5    adopting report and recommendation, 2020 WL 7631441 (C.D. Cal. Dec. 22, 2020).

6           Petitioner's argument fares no better on the merits.  Admission of evidence

7    violates due process only if the jury could draw no permissible inferences from the evidence.

8    Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991) ("Even then, the evidence must

9    'be of such quality as necessarily prevents a fair trial.'")  Here, the state court affirmed the trial

10   court's admission of the evidence stating that courts "have upheld the admission of prior

11   burglaries as relevant to prove the defendant possessed the intent to steal" particularly "where the

12   two burglaries were remarkably similar, and the question of defendant's mental state was the

13   primary contested issue at trial." ECF No. 12-10 at 15.  After independently reviewing the

14   record, this Court concludes that it was not objectively unreasonable for the state court to find that

15   that the jury could permissibly infer Petitioner had the required mental states for the charged

16   offenses.  Despite Petitioner's arguments to the contrary, his previous burglary and theft is

17   strikingly similar to the charged crimes in this case.  The first incident occurred about 10 to 15

18   years ago and involved Petitioner breaking into his grandparent's home, posing with one of their

19   guns, and stealing their jewelry and truck. ECF No. 12-5 at 93-95, 291-92.  In the incident at

20   issue in this case, Petitioner broke into the same house and stole guns, jewelry, and the pickup

21   truck. ECF No. 12-5 at 285-86, 290-96.  Federal courts allow similar prior bad acts to prove

22   intent to commit a crime.  See, e.g., Williams v. Stewart, 441 F.3d 1030, 1040 (9th Cir. 2006).

23   The fact that the prior incident occurred 10 to 15 years earlier does not make it too remote to be

24   relevant.  See, e.g., Nava, 816 F. App'x at 193 (concluding that state appellate court reasonably

25   found that any error from admission of 43-year-old prior act was harmless); United States v.

26   Spillone, 879 F.2d 514, 519 (9th Cir. 1989) (declining "to adopt an inflexible rule excluding

27   evidence of prior bad acts after a certain amount of time elapses").  Even if there was an error, the

28   trial court mitigated any prejudicial effect by instructing the jury to consider that evidence for a

24

1    limited purpose.  ECF No. 12-4 at 189.

2           Lastly, to the extent Petitioner claims prosecutorial misconduct for failing to

3    correct false testimony about a third break-in, this claim fails.  After reviewing the record, this

4    Court agrees with the state court's finding that "[w]hile the cited testimony was arguably

5    ambiguous…[t]here was no evidence of any such incident, and neither counsel even mentioned a

6    third incident at any point during the trial."  ECF No. 12-10 at 16.

7           In the traverse, Petitioner now claims that the state court's finding was based on an

8    unreasonable interpretation of the facts under § 2254(d)(2). ECF No. 22 at 5-8 & n.2.

9    Respondent argues that Petitioner cannot properly raise this claim for the first time in a traverse

10   and the claim is unexhausted.  (ECF No. 23.)  Because an application for writ of habeas corpus

11   can be denied on the merits even when Petitioner has failed to exhaust state remedies, 28 U.S.C. §

12   2254(b)(2), this Court considers the merits of his argument.  Under § 2254(d)(2), a state court

13   decision based on a factual determination is not to be overturned on factual grounds unless it is

14   "objectively unreasonable in light of the evidence presented in the state court proceeding."

15   Stanley, 633 F.3d at 859 (citation omitted).  As described above, the state court's determination

16   that the incidents were similar and relevant to show intent was not objectively unreasonable.

17   Petitioner's conclusory statement that the incidents are dissimilar is not enough to meet this

18   challenging standard.  Petitioner cites Kipp v. Davis, 971 F.3d 939 (9th Cir. 2020) to support his

19   argument, but this case is inapposite.  In Kipp, the two incidents involved different victims in

20   different locations making the crimes "too dissimilar to support an inference of connection by

21   common identity or intent."  Kipp, 971 F.3d at 955.  Here, both incidents involved breaking into

22   and stealing property from his grandparent's home.

23          This Court concludes that the state court's decision was not contrary to, or an

24   unreasonable application of, clearly established Supreme Court authority, nor was it based on an

25   unreasonable determination of facts and recommends denying habeas relief on this claim.

26   / / /

27   / / /

28   / / /

1       **E.**     **Claim 5: Cumulative Error**

2            Lastly, Petitioner claims that the cumulative errors at his trial deprived him of due

3 process of the law and his counsel's failure to correct them amount of ineffective assistance of

4 counsel. ECF No. 1 at 5; see also ECF No. 22 at 15. Respondent argues that the state court's

5 rejection of Petitioner's cumulative error claim was reasonable. ECF No. 12-1 at 28-29. The

6 state appellate court rejected Petitioner's argument. ECF No. 12-10 at 17.

7            The Ninth Circuit has concluded that under clearly established United States

8 Supreme Court precedent the combined effect of multiple trial errors may give rise to a due

9 process violation if it renders a trial fundamentally unfair, even where each error considered

10 individually would not require reversal. Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007)

11 (citing Donnelly, 416 U.S. at 643, and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).

12 "[T]he fundamental question in determining whether the combined effect of trial errors violated a

13 defendant's due process rights is whether the errors rendered the criminal defense 'far less

14 persuasive,' and thereby had a 'substantial and injurious effect or influence' on the jury's

15 verdict." Parle, 505 F.3d at 928 (internal citations omitted); see also Hein v. Sullivan, 601 F.3d

16 897, 916 (9th Cir. 2010) (same).

17            This Court has addressed each of Petitioner's claims and has concluded that no

18 error of constitutional magnitude occurred. This court also concludes that the alleged errors, even

19 when considered together, did not render Petitioner's defense "far less persuasive," nor did they

20 have a "substantial and injurious effect or influence on the jury's verdict." Accordingly,

21 Petitioner is not entitled to relief on his claim of cumulative error.

22            To the extent Petitioner attempts to argue an ineffective assistance of counsel

23 claim, this also lacks merit. To state an ineffective assistance of counsel claim, a defendant must

24 show that (1) his counsel's performance was deficient, falling below an objective standard of

25 reasonableness, and (2) his counsel's deficient performance prejudiced the defense. Strickland v.

26 Washington, 466 U.S. 668, 687-88 (1984). For the deficiency prong, "a court must indulge a

27 strong presumption that counsel's conduct falls within the wide range of reasonable professional

28 assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action 'might be considered sound trial strategy.'" Id. at 689.  For the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Because none claims Petitioner's raises arise to constitutional errors, this Court cannot conclude that defense counsel's failure to correct the alleged errors amount to ineffective assistance of counsel.

The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.  This Court recommends denying relief on this claim as well.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 20, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE